UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

N⁰ 10 Civ. 4372 (RJS)

JONATHAN STEINBERG,

Plaintiff,

VERSUS

TOM ZEBRASKY,

Defendant.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 6/14/2011

MEMORANDUM AND ORDER
June 14, 2011

RICHARD J. SULLIVAN, District Judge:

Plaintiff Jonathan Steinberg brings this *pro se* diversity action against Defendant Tom Zebrasky, seeking damages for the conversion, "unlawful bailment," and "trover" of his vintage Aston Martin automobile.[1] Now before the Court is Defendant's motion to dismiss the Amended Complaint on the grounds that the Court lacks subject matter jurisdiction and the claims are barred by the statute of limitations. For the reasons that follow, Defendant's motion is granted.

---

[1] Aston Martin is a famed British automobile manufacturer best known for the Aston Martin DB5 and DBS, which were driven by James Bond in films such as *Goldfinger* (1964), *Thunderball* (1965), and *Casino Royale* (2006). The Aston Martin will also be featured in the upcoming Disney/Pixar film *Cars 2* (2011), with Michael Caine supplying the voice for the cartoon version of the British racer.

I. BACKGROUND

A. Facts[2]

On or about November 22, 1999, Plaintiff, a New York resident, contracted with Defendant, an Ohio resident, to sell his 1967 Aston Martin DB6 for $25,000. (Am. Compl. ¶ 1.) Under the terms of the contract, Defendant was to drive to New York, collect the car from a facility in

---

[2] The facts relevant to the resolution of Defendant's motion are drawn from the Amended Complaint. Plaintiff's factual allegations are assumed to be true and all reasonable inferences are drawn in his favor. *See In re Ades & Berg Group Investors*, 550 F.3d 240, 243 n.4 (2d Cir. 2008). In resolving the instant motion, the Court has also considered Defendant's Brief in Support of the Motion to Dismiss ("Def.'s Mem."), Plaintiff's Memorandum of Law in Opposition ("Pl.'s Opp'n"), and Defendant's Reply Memorandum of Law ("Reply"), as well as the affidavits and exhibits attached thereto.

Queens, and then meet Plaintiff to deliver a certified check. (*Id.* ¶¶ 2-3.) Although Defendant obtained the car in Queens, he failed to meet Plaintiff and pay the purchase price. (*Id.* ¶¶ 5-6.) Instead, he drove the car to Ohio. (*Id.* ¶ 7.) Defendant subsequently contacted Plaintiff but refused Plaintiff's demand to pay for the vehicle or return it. (*Id.* ¶ 8.) Over the next several years, the parties attempted to renegotiate the contract, but no agreement was reached. (*Id.*)

Seven years later, in late 2006, Defendant notified Plaintiff that the engine serial number did not match the serial number to the chassis, and that the person storing the car in Queens had stolen the original engine prior to Defendant retrieving the car. (*Id.* ¶ 10.) As a result, Defendant proposed that the parties renegotiate the contract to account for the defective engine. (*Id.*) Once again, the parties were unsuccessful in negotiating the terms of a new contract.

Finally, on April 14, 2010, Defendant informed Plaintiff that he no longer wanted to purchase the car because of its condition. (*Id.* ¶ 11.) Shortly thereafter, Defendant sent a letter by certified mail demanding payment for restoration work and storage fees on the car dating back to 1999. (*Id.* ¶ 13.) He told Plaintiff he would sell the car in satisfaction of the fees if Plaintiff did not pay. (*Id.* ¶ 14.) Plaintiff demanded return of the car and arranged to pick up the car, but Defendant refused to relinquish possession. (*Id.* ¶ 15.) Defendant thereafter initiated proceedings in Ohio state court to recover the money allegedly owed to him for storing the vehicle.[3] (*Id.* ¶ 17.)

### B.  Procedural History

On June 3, 2010, Plaintiff filed his initial Complaint, alleging, *inter alia*, breach of contract and conversion. On December 2, 2010, Plaintiff filed his Amended Complaint, abandoning the breach of contract claim and bringing claims for (1) conversion, (2) "unlawful bailment," and (3) a cause of action "akin to trover." (*Id.* at 6-7.) On December 6, 2010, Defendant filed his motion to dismiss, arguing that (1) this Court lacks subject matter jurisdiction since the amount in controversy is less than $75,000, and (2) Plaintiff's claims are time barred under the applicable statute of limitations. The motion was fully submitted as of February 10, 2011.

## II.  DISCUSSION

### A.  Subject Matter Jurisdiction

Federal district courts have original subject matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting 28 U.S.C. § 1332(a)). Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Neither party disputes that

---

[3] Defendant filed his Ohio complaint on June 2, 2010, seeking damages in excess of $25,000. (*See* Thomas Zebrasky Aff., Oct. 10, 2010 ("Zebrasky Aff.").) Although Defendant attached the affidavits of Thomas Zebrasky and Kevin Kay to the courtesy copy of his motion papers, the affidavits were never docketed. By separate Order, the Court has directed the Clerk of the Court to docket these affidavits.

2

they are diverse from each other, so the only jurisdictional issue is whether Plaintiff's claims meet the amount in controversy requirement.

A party invoking the jurisdiction of the federal court has "the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (quoting *Moore v. Retit*, 511 F.2d 1004, 1006 (2d Cir. 1975)). This burden is "hardly onerous," because the Second Circuit "recognize[s] 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" *Scherer*, 347 F.3d at 397 (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)).

To overcome this presumption, "the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Id.* (quoting *Wolde-Meskel*, 166 F.3d at 63). The Second Circuit has set a high bar to overcome this presumption. "'[T]he legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim.'" *Id.* (quoting *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust Co. of Chi.*, 93 F.3d 1064, 1070-71 (2d Cir. 1996)). "'[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted.'" *Id.* (quoting *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982)) (alterations in original). However, a court may resort to "matters outside of the pleadings . . . to amplify the meaning of the complaint's allegations." *Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 757 F. Supp. 283, 285 (S.D.N.Y. 1991) (citing *Harbor Island Spa*, 684 F.2d at 202).

In this case, Plaintiff alleges that the current value of the car is approximately $170,000. (*See* Am. Compl. ¶ 12.) To prove the amount in controversy, Plaintiff provides a blog article regarding a recent Aston Martin auction. (*See* Jonathan Steinberg Aff., Dec. 17, 2010, Ex. E ("Steinberg Aff.").) The auction house in the article, Bonhams, is the same auction house that is allegedly interested in selling Plaintiff's Aston Martin. (*Id.* ¶ 14.) The article states that the auction "smashe[d] records" and lists the selling price of several Aston Martins ranging from £84,000 to £513,000.[4] (*Id.*, Ex. E.) Plaintiff also states that he has made inquiries "through the DB4, 5, and 6 Aston Martin community in London," and there is a person who buys Aston Martins in poor condition "at sums approaching [$170,000]." (*Id.* ¶ 21.) However, Plaintiff also acknowledges that Bonhams estimated the car's value at $40,000. (*Id.* ¶ 32.)

To counter the price allegation, Defendant provides a pricing report, an affidavit from a professional automotive restorer, and three websites showing sales prices for comparable Aston Martins. Defendant's pricing report from "www.oldcarsreport.com" values Aston Martins from $3,440 to $150,000 as of February 2010. (*See* Zebrasky Aff. at 2.) The affidavit from the "professional automotive restorer" notes that a "very nice" Aston Martin sold on eBay for $100,000 but concludes that Plaintiff's Aston Martin is worth $25,000 to $35,000. (*See id.*, Kevin Kay Aff., Sept. 27, 2010, at 2.) The affiant's conclusion is based on information

---

[4] The Court takes judicial notice that these sums, when converted to U.S. dollars, would exceed $75,000.

3

about the car's condition provided by Defendant and not a personal inspection of the car. (*Id.*) Finally, Defendant provides copies of screenshots from three websites. (*See id.*, Zebrasky Aff. at 3-5.) The first page is a screenshot from "Kaboodle.com" that lists an Aston Martin for sale by an individual for £37,750.[5] (*Id.* at 3.) The second page is from an unidentified website that lists an auction for an Aston Martin. (*Id.* at 4.) The page reflects that the car received 17 bids, but then states: "No Sale: $39,100 – auction ended early – no longer for sale."[6] (*Id.*) Finally, Defendant provides a printout from Plaintiff's personal website where Plaintiff offers the Aston Martin at issue for $30,000. (*See id.* at 5.) Plaintiff, however, responds that the offer was posted on the website over a decade ago and "the site simply has not changed since that time as there is not [sic] activity . . . on it." (Steinberg Aff. ¶ 3.)

In an action for conversion, the measure of damages is the value of the property at the time and place of the conversion. *See Palermo v. Taccone*, 913 N.Y.S.2d 859, 862 (App. Div. 2010) (quoting *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980)). Thus, to rebut the presumption that "the face of the complaint is a good faith representation of the actual amount in controversy," *Scherer*, 347 F.3d at 397 (internal citation omitted), Defendant must prove that the market value of the Aston Martin was less than $75,000 at the time and place of conversion.

---

[5] A handwritten notation of "$51,182.00 USD" appears on the Kaboodle.com attachment. The Court makes no determination regarding the accuracy of this notation.

[6] This page also contains the following handwritten notation: "No sale, did not meet reserve price." The Court makes no determination regarding the accuracy of this notation.

Neither party has submitted evidence of the Aston Martin's value in 1999, the time of the initial conversion. (Am. Compl. ¶ 7.) However, for the reasons set forth in Part II.C below, Plaintiff's entire conversion claim is predicated on Defendant's breach of the contract in 1999. Because it is undisputed that the contract price was $25,000 (*id.* ¶ 1), and Plaintiff has alleged no facts to suggest that the value of the car in 1999 exceeded the contract price, the Court finds that the amount recoverable in this action does not meet the jurisdictional threshold of $75,000.

B. Statute of Limitations

Defendant argues in the alternative that the action should be dismissed because Plaintiff's claims are barred by the applicable statutes of limitations. The Court construes this argument as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). Because the Court's subject matter jurisdiction rests on diversity of citizenship, the Court applies New York's statutes of limitations. *See Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626-27 (2d Cir. 1998) ("Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York . . . statutes of limitations."); *accord Guaranty Trust Co. v. York*, 326 U.S. 99, 109-11 (1945) (holding that because statutes of limitations "so intimately affect recovery or non-recovery," a federal court should follow state law).

As previously noted, the Amended Complaint includes three causes of action: (1) conversion, (2) unlawful bailment, and (3) trover. (Am. Compl. 6-7.) The Court notes that Plaintiff's first and third cause of action are duplicative because the "modern

4

law of conversion is derived from the common law action of trover." *Iglesias v. United States*, 848 F.2d 362, 364 (2d Cir. 1988); *see also* Restatement (Second) of Torts § 222A cmt. a (same). The second cause of action, Plaintiff's "unlawful bailment" claim, appears to be a cause of action to recover a chattel. (*See* Pl.'s Opp'n 4 (noting that this is "an action in conversion, trover, and *detinue*" (emphasis added)).) "Detinue" was a common law action that provided a remedy for the improper detention of property. *See Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 287 n.6 (2007). "Detinue has been superseded almost entirely by statutory actions for the recovery of personal property, or by actions in replevin broadened in scope to include the recovery of personal property wrongfully detained." 66 Am. Jur. 2d Replevin § 132; *see also* N.Y. C.P.L.R. 7101 cmt. ("Eventually, replevin merged with detinue . . . .").

Because all three causes of action deal with the unlawful taking or detaining of chattel, the same three-year statute of limitations applies. *See* N.Y. C.P.L.R. 214(3). "The time within which an action must be commenced . . . shall be computed from the time the cause of action accrued to the time the claim is interposed." *Id.* 203(a). A cause of action for conversion accrues when "all of the facts necessary to sustain the cause of action have occurred, so that a party could obtain relief in court." *New York v. Seventh Regiment Fund*, 98 N.Y.2d 249, 259 (2002) (quotation omitted). A cause of action for conversion is complete when the party in possession of the property openly interferes with the true owner's rights in it. *Id.* at 260-61. Similarly, a cause of action to recover a chattel accrues upon the bad faith or unlawful taking or detention of the chattel. *See Grosz v. Museum of Modern Art*, No. 09 Civ. 3706 (CM) (THK), 2010 WL 88003, at *7 (S.D.N.Y. Jan. 06, 2010) (citing *Close-Barzin v. Christie's, Inc.*, 857 N.Y.S.2d 545, 546 (App. Div. 2008)). Where, as here, a plaintiff brings claims for both conversion and recovery of chattel, the accrual date for purposes of the statute of limitations is the same. *See Mirvish v. Mott*, 901 N.Y.S.2d 603, 608 (App. Div. 2010) ("Where replevin is sought against the party who converted the property, the action accrues on the date of conversion.").

In his Amended Complaint, Plaintiff alleges two acts of conversion. (*See* Am. Compl. ¶¶ 7, 15; Steinberg Aff. ¶¶ 17, 28, 35, 36.) According to Plaintiff, the first conversion took place in 1999 when Defendant "unlawfully" took the Aston Martin to Ohio without paying for it. (Am. Compl. ¶ 7.) But Plaintiff alleges that he excused this conversion while he and Defendant renegotiated the contract. (*See id.* ¶¶ 6-9; Steinberg Aff. ¶¶ 6, 15, 17.) The second conversion allegedly occurred in 2010, when contract negotiations terminated and Plaintiff demanded the return of the car. (*See* Am. Compl. ¶ 15.)

Although New York law recognizes the possibility of multiple conversions, in which case the statute of limitations is calculated from the date of the last conversion, the law is quite clear that there can be no "new" conversion where there has been an unbroken chain of ownership and possession by the defendant. *See Mirvish*, 901 N.Y.S.2d at 608 (finding that statute of limitations was not restarted where the defendant's "assumption and exercise of the right of ownership over" the plaintiff's personal property remained unbroken). Here, Defendant has continually possessed the Aston Martin for more than 11 years. Accordingly, the statute of limitations began to run at the time of the initial conversion in

1999 and not when Defendant refused to return the car in 2010. Therefore, Plaintiff's decade-old conversion, trover, and unlawful bailment claims are time barred.[7]

### C. Failure to State a Claim

Even if Plaintiff's claims were not barred by the applicable statutes of limitations, the Court would still dismiss Plaintiff's complaint for failure to state a claim. *See Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000); *see also Muka v. Murphy*, 358 Fed. App'x 239, 241 (2d Cir. 2009) ("A district court's ability *sua sponte* to dismiss a complaint that lacks a basis in law or fact is well-established.").

In deciding a motion to dismiss under Rule 12(b)(6), this Court must accept all well-pled allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A pleading that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (citations omitted). Thus, if a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

As previously noted, the Amended Complaint formally asserts causes of action for conversion, "unlawful bailment," and trover.[8] (Am. Compl. 6-7.) For the reasons stated above, Plaintiff's trover claim is duplicative of his conversion claim, and his "unlawful bailment" claim is a cause of action for the recovery of chattel. *See supra* Part II.B. Accordingly, the Court will analyze only the conversion and "unlawful bailment" claims.

"Conversion is the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Mirvish*, 901 N.Y.S.2d at 607 (quoting *Employers' Fire Ins. Co. v. Cotten*, 245 N.Y. 102, 105 (1927)). The basis of an action for conversion is "the denial or violation of the plaintiff's dominion over, rights to, or possession of property." *Id.* (citing *Sporn v. MCA Records*, 58 N.Y.2d 482, 487 (1983)). However, a claim of conversion cannot be predicated on a "mere breach of contract." *Kopel v. Bandwidth Tech. Corp.*, 868 N.Y.S.2d 16, 17 (App. Div. 2008); *see East End Labs., Inc. v. Sawaya*, 914 N.Y.S.2d 250, 251 (App. Div. 2010); *Schmidt v. Lorenzo*, 894 N.Y.S.2d 641, 642 (App. Div. 2010); *Key Bank of N.Y. v. Grossi*, 642 N.Y.S.2d 403, 404 (App. Div. 1996); *see also Anyika v. Moneygram*

---

[7] The fact that the parties continued to renegotiate the contract over a period of more than 11 years does not alter this conclusion. *See Grosz*, 2010 WL 88003, at *14-15 (finding "utterly unpersuasive" plaintiff's argument that compromise negotiations tolled the statute of limitations). Indeed, Plaintiff, as an attorney, should be well aware that the purpose of a statute of limitations is to prevent plaintiffs from burdening the courts with stale claims. *See Enter. Mortg. Acceptance Co., Sec. Litig. v. Enter. Mortg. Acceptance Co.*, 391 F.3d 401, 409 (2d Cir. 2004).

[8] In his opposition papers, Plaintiff argues for the first time that Defendant holds the car under a constructive trust, and he seeks a new cause of action imposing a constructive trust on Defendant. (*See* Pl.'s Opp'n 9, 12-13.) Because this claim was not raised in the Amended Complaint, the Court declines to address it. *See Levine v. Zadro Products, Inc.*, No. 02 Civ. 2838 (GBD), 2003 WL 21344550, at *3 (S.D.N.Y. 2003).

*Payment Sys., Inc.*, No. 13467/08, 2009 WL 3817464, at *3 (Sup. Ct. King's County Nov. 16, 2009) ("[W]here there are no independent facts alleged that constitutes a separate taking which could give rise to tort liability, apart from an alleged breach of contract, the cause of action must be dismissed.").

Plaintiff alleges that the parties entered into a contract on November 22, 1999 for the sale of the car. (Am. Compl. ¶ 1.) He then alleges a series of breaches to that contract committed by Defendant in 1999 (*id.* ¶¶ 5-7), the most significant breach being that Defendant took the car to Ohio without paying for it (*id.* ¶¶ 6-7). Thus, Plaintiff's entire conversion claim is predicated on Defendant's breach of contract. Plaintiff has failed to allege any obligation arising independently of the contract. Therefore, even if all of Plaintiff's allegations were true, he would not be entitled to recover damages on his conversion claim because it is predicated on a "mere breach of contract." *East End Labs.*, 914 N.Y.S.2d at 251.[9]

As with his conversion claim, Plaintiff's "unlawful bailment" claim must also fail because he has not alleged any obligation outside of the original contract. *See Spanierman Gallery, PSP v. Love*, No. 03 Civ. 3188 (VM), 2003 WL 22480055, at *3 (S.D.N.Y. Oct. 31, 2003) (dismissing plaintiff's replevin claim and holding that it is a "'well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated'" (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987)). Moreover, since the purpose of the action is to recover possession, "a plaintiff may not seek damages alone." *M & D Sportswear, Inc. v. PRL U.S.A. Holdings, Inc.*, No. 02 Civ. 1562 (GEL), 2002 WL 31548495, at *5 (S.D.N.Y. 2002). In his Amended Complaint, Plaintiff seeks only damages and not the return of the Aston Martin, and therefore fails to state a claim for the recovery of a chattel.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, thus ending the parties' 11-year saga over a vintage sports car. If Plaintiff wants possession of the car, he will have to defend himself against Defendant's action in Ohio. Otherwise, Plaintiff will have to content himself with reruns of Bond films or the animated antics of a cartoon Aston Martin. In any event, the Clerk of the Court is respectfully directed to terminate the motion located at docket number 15 and to close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: June 14, 2011
New York, New York

\* \* \*

Plaintiff, Jonathan R. Steinberg, 200 East 90th Street, New York, NY 10128, appears *pro se*. Defendant is represented by William C. H. Ramage, 4822 Market Street, Suite 200, Boardman, OH 44512.

---

[9] As noted above, Plaintiff's original complaint included a claim for breach of contract. The Amended Complaint dispensed with this claim, presumably because the four-year statute of limitations for the breach of a 1999 sale-of-goods contract had clearly expired by 2010.